## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID YURMAN ENTERPRISES LLC, DAVID YURMAN RETAIL LLC, and DAVID YURMAN IP LLC | |
| *Plaintiffs*, | Civil Action No.: 1:23-cv-8224 |
| v. | **JURY TRIAL DEMANDED** |
| ROYAL CHAIN INC. (d/b/a ROYAL CHAIN GROUP), | |
| *Defendant*. | |

## COMPLAINT

Plaintiffs David Yurman Enterprises LLC, David Yurman Retail LLC, and David Yurman IP LLC (collectively, "Yurman"), by and through their undersigned counsel, for their Complaint against Defendant Royal Chain Inc. d/b/a Royal Chain Group ("Defendant" or "Royal Chain"), hereby allege as follows:

## SUBSTANCE OF THE ACTION

1.      This action arises out of Defendant's efforts to misappropriate Yurman's intellectual property and undermine its market position by offering for sale and selling jewelry that copies the designs of iconic Yurman jewelry pieces, thereby infringing upon Yurman's world-famous trade dress and trademarks and infringing upon its copyrights.

2.      Defendant's copying of Yurman's jewelry designs has been calculated and systematic. Defendant's knock-off products seek to imitate Yurman jewelry pieces across multiple distinct collections, including by copying structure, insignia, and design flourishes that distinguish Yurman jewelry designs. Defendant has methodically replicated the distinctive

1

features of Yurman bracelets, rings, necklaces, pendants, earrings, and chains to trick consumers and unfairly profit from Yurman's continuing investment in bold and innovative design. Accordingly, Yurman brings this lawsuit to vindicate its rights and to protect consumers from Defendant's predatory marketing.

3.     Yurman brings claims for unregistered trade dress infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, copyright infringement under the Copyright Act, 17 U.S.C. § 101, registered trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114, and related claims of trade dress infringement and unfair competition under New York common law.

4.     Yurman seeks to permanently enjoin and restrain Defendant from manufacturing, distributing, and selling products that infringe upon Yurman's trade dress, trademarks, and copyrights.  Yurman also seeks monetary damages resulting from Defendant's infringement of Yurman's intellectual property.  Because Defendant has knowingly misappropriated Yurman's intellectual property for its own benefit, disregarding Yurman's rights, its infringement is willful. Accordingly, Yurman also seeks and is entitled to an award of treble damages, costs, and attorneys' fees.

**THE PARTIES**

5.     Plaintiff David Yurman Enterprises LLC is a limited liability company organized and existing under the laws of the state of Delaware.  It maintains its principal place of business at 24 Vestry Street, New York, New York, and is a global leader in the design, manufacture, distribution, and sale of jewelry and luxury goods, and it designs, manufactures, distributes, and sells goods embodying the Yurman Trade Dress (defined below) and the other intellectual property described herein.  It also is the successor in interest to all rights in one of the registered

copyrights at issue in this litigation as a result of its merger on or about February 24, 2012, with the original claimant, a Yurman affiliate.

6.      Plaintiff David Yurman Retail LLC is a limited liability company organized and existing under the laws of the state of Delaware.  It maintains its principal place of business at 24 Vestry Street, New York, New York, and is engaged in the sale of fine jewelry and luxury goods, including the sale of goods embodying the Yurman Trade Dress (defined below) and the other intellectual property described herein.

7.      Plaintiff David Yurman IP LLC is a limited liability company organized and existing under the laws of the state of Delaware.  It maintains a principal place of business at 24 Vestry Street, New York, New York, and owns, manages, and enforces intellectual property rights relating to Yurman's designs, including the intellectual property at issue.  Namely, David Yurman IP LLC is the registrant of the Yurman Marks (defined below).  And David Yurman IP LLC (1) is the direct claimant to certain of the registered copyrights at issue; (2) was assigned the entire right, title, and interest in and to certain of the other registered copyrights at issue, including all causes of action for infringement thereof, in an assignment agreement dated May 1, 2012, with the original claimant, a Yurman affiliate; and (3) is the successor in interest to all rights in the remaining registered copyrights as a result of its merger on or about February 24, 2012, with the original claimant, a Yurman affiliate.

8.      Defendant Royal Chain is, on information and belief, a corporation organized and existing under the laws of the state of New York and maintains its principal place of business at 2 West 46th Street, New York, New York.  On further information and belief, it was founded in or around 1978 and is an importer and distributor of metal jewelry.  In addition to residing in this District, Defendant has been and is doing business in this District by advertising, promoting, and

selling its products to consumers and retailers in this District, including advertising and promoting products via its publicly-accessible and interactive websites at www.royalchain.com and www.phillipgavriel.com, selling products to consumers in this District via www.phillipgavriel.com, and selling products to consumers through brick and mortar retailers located in this District.

## JURISDICTION AND VENUE

9.      On information and belief, Defendant is subject to the personal jurisdiction of this Court under New York Civil Practice Law and Rules §§ 301 and/or 302(a) because Defendant's place of incorporation and principal place of business is New York and/or because Defendant has contracted to supply goods or services in New York in connection with matters giving rise to this suit.

10.     This Court has subject matter jurisdiction over Yurman's claims for trade dress infringement, unfair competition, and trademark infringement arising under 15 U.S.C. § 1051 et seq., and its claims for copyright infringement arising under 17 U.S.C. § 101 et seq., pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 15 U.S.C. § 1121.

11.     Yurman's claims for trade dress infringement, unfair competition, and trademark infringement arising under New York common law are so related to its claims arising out of federal law that they form part of the same case or controversy.  This Court therefore has supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and/or (c) because Defendant transacts business in this district and/or because a substantial portion of the events giving rise to the claims occurred in this District.

## FACTS

### Yurman's Business and Brand

13.     Yurman is a world-famous designer and supplier of jewelry, luxury timepieces, and related accessories, which are marketed under the brand name "David Yurman®."  Founded in 1980 by husband-and-wife artist duo David and Sybil Yurman, Yurman is celebrated and known for the creativity and beauty of its designs, with its iconic "helix cable" design elements a particular signature of the brand.

14.     Yurman designs have appeared on the covers of *Vogue* and *Vanity Fair* and adorned spokespersons like Scarlett Johansson, Naomi Campbell, Kate Moss, and Gisele Bundchen.  Yurman has been credited with having "led the way" in a "pivotal movement in the transformation of the jewelry industry" in appealing to a new category of customers: "women who would purchase jewelry for themselves instead of traditionally receiving it as a gift."

15.     Yurman's iconic designs are protected by numerous common law and federally-registered copyrights and trademarks, including those identified in paragraphs 24-101, and numerous of the designs are so associated with Yurman as to constitute protected trade dress. This intellectual property is among Yurman's most valuable assets.  Infringement of Yurman's intellectual property through the wrongful reproduction of protected Yurman designs by infringers like Defendant has the natural and intended effect of eroding the goodwill associated with the Yurman brand and destroying the legitimate market in which it operates by confusing the consuming public.

16.     Yurman offers for sale and sells its products subject to trademark, copyright, and trade dress protection throughout the United States and the world, including in this District.  By offering for sale and selling products that incorporate infringing versions of protected Yurman designs, Defendant directly and unfairly competes with Yurman's economic interests in the

United States, including the state of New York, thereby causing Yurman irreparable harm and damage, including irreparable harm and damage within this jurisdiction.

17.     To combat the harm caused to Yurman and consumers by infringers like Defendant, Yurman expends significant resources in enforcing its intellectual property rights.

**Yurman's Trade Dress**

18.     One of Yurman's most well-known and popular jewelry lines is its "Cable Classics" bracelet collection.  Based on a twisted cable bracelet that Yurman's cofounder, David Yurman, made for himself and his wife, the first Cable Classics bracelet was designed and launched in 1982 and has been incorporated in over two thousand iterations—incorporating different metals, gemstones, and dimensions—in the forty years that have passed since then.

19.     The Cable Classics Collection® and numerous collections released by Yurman before and since its introduction incorporate a signature twisted helix cable element (designs incorporating that element, the "Yurman Helix Cable Designs").

20.     The Yurman Helix Cable Designs are well known and famous and have been for decades.  As *The New York Times* has noted, the iconic cable bracelet designs constitute "the David Yurman brand's DNA" and "became [its] signature in the vroom vroom '80s."  As a *Vogue* editor commented to the *Times*: "The cable bracelet didn't really look like anything else . . . It was very unique, and that has been one of the reasons they've been successful for so long — this unwavering point of view. To have that sort of clarity is very powerful."

21.     The Yurman Helix Cable Designs routinely attract unsolicited media coverage, much of which comments on the iconic nature of the Yurman Helix Cable Designs and the strong association between them and the brand itself.  In the past year alone, this has included *Harper's Bazaar*'s listing of Yurman as one of "The 14 Best Fine Jewelry Brands That Belong in

6

Your Lineup" based on its "cable chains, the brand's artistic signature"; *Forbes* listing Yurman as a source of "Keep-Forever Pieces" and commenting that "[t]he brand is most-known for its signature Cable Classic bracelets"; *Parade* commenting that "the cable bracelet is David Yurman's artistic signature"; and *Elle* listing Yurman as "Best for Bracelets" and noting, "[y]ou see a cable-twist bangle and you instantly know who made it: David Yurman."

22.     As this demonstrates, customers and members of the public perceive the uniqueness and distinctiveness of Yurman's jewelry pieces, particularly pieces featuring the Yurman Helix Cable Designs, and associate those pieces with Yurman and the David Yurman brand.

23.     Yurman has incorporated the Yurman Helix Cable Designs into numerous groups of products characterized by distinctive trade dress.

<u>*Trade Dress 1: Yurman's Cable Classic Trade Dress*</u>

24.     First, due to Yurman's innovative designs, extensive promotion, and reputation for quality and elegance, the underlying design of certain jewelry pieces from Yurman's Cable Classics Collection®, The Thoroughbred Collection®, and other related collections has become inextricably associated with the Yurman brand and constitutes a protected trade dress (the "Cable Classic Trade Dress") such that consumers identify Yurman as the source of any jewelry pieces embodying the Cable Classic Trade Dress.

25.     Yurman has uninterruptedly sold and marketed numerous jewelry pieces embodying the Cable Classic Trade Dress since at least 1993, including but not limited to pieces released as part of Yurman's 1993 Collection, Yurman's Renaissance® Collection, and The Thoroughbred Collection®.  Select examples of jewelry pieces embodying the Cable Classic Trade Dress include: the Yurman Cable Classics Bracelet with Pavé Domes and 18K Yellow

Gold; the Yurman Cable Classics Collection Bracelet with Pearls and Diamonds; the Yurman Thoroughbred Collection Bracelet No. B4425; and the Yurman 1993 Collection Cable Classics Bracelet No. B3950 (each depicted in Figure 1 below, in which the common elements shared by these examples, described below in paragraph 27, are immediately apparent).

26.     Additional images of jewelry pieces embodying the Cable Classic Trade Dress, which were submitted for deposit with the United States Copyright Office, are included in Exhibit A.

27.     These and other jewelry pieces designed, promoted, and sold by Yurman reflect and embody the Cable Classic Trade Dress, which includes the following distinctive and non-functional design elements:

- A bracelet design comprising Yurman's signature twisted helix cable configuration, which presents the external appearance of between 6 and 10 individual strands of material entwined with one another to form a single cable.

- A relatively thin (between 3mm and 8mm in thickness), flexible, open cuff bracelet design, comprising an incomplete circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, incorporating a single gap measuring approximately 10-20mm across.

- Rounded and smooth ridges along the length of the twisted cable portion of the bracelet.

- A raised neck at each open end of the bracelet design comprising between 1 and 5 raised bands of sterling silver, yellow gold, rose gold, or similar precious metals.

- A tapered design from each raised neck to the open ends of the bracelet, which are
  capped in a rounded shape comprising precious stones, minerals, pearls, or
  precious metals.

**Figure 1 – Examples of Yurman's Cable Classic Trade Dress**



28.    The design elements combined in the Cable Classic Trade Dress as embodied in
these and other Yurman jewelry pieces do not provide significant non-reputational or utilitarian
benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of
these design elements in jewelry pieces impose any significant, non-reputational disadvantage on
competitors.

*Trade Dress 2: Yurman's Helena Neck Trade Dress*

29.     Second, due to Yurman's innovative designs, extensive promotion, and reputation for quality and elegance, the underlying design of certain jewelry pieces from Yurman's Helena Collection and other related collections has become inextricably associated with the Yurman brand and constitutes a protected trade dress (the "Helena Neck Trade Dress") such that consumers identify Yurman as the source of any jewelry pieces embodying the Helena Neck Trade Dress.

30.     Yurman has uninterruptedly sold and marketed numerous jewelry pieces embodying the Helena Neck Trade Dress since at least 2016, including but not limited to pieces released as part of Yurman's Helena Collection.  Select examples of jewelry pieces embodying the Helena Neck Trade Dress include: the Yurman Petite Helena Bracelet in Sterling Silver with 18K Yellow Gold Domes and Pavé Diamonds; the Yurman Petite Helena Bracelet in Sterling Silver with 18K Yellow Gold and Pavé Diamonds; the Yurman Helena Bracelet in 18K Yellow Gold with Pearls and Pavé Diamonds; and the Yurman Helena Bracelet in Sterling Silver with Turquoise, 18K Yellow Gold, and Pavé Diamonds (each depicted in Figure 2 below, in which the common elements shared by these examples, described below in paragraph 31, are immediately apparent).

31.     These and other jewelry pieces designed, promoted, and sold by Yurman reflect and embody the Helena Neck Trade Dress, which includes the following distinctive and non-functional design elements:

- A bracelet design comprising Yurman's signature twisted helix cable configuration, which presents the external appearance of between 6 and 10 individual strands of material entwined with one another to form a single cable.

- A relatively thin (between 2mm and 6mm in thickness), flexible, open cuff bracelet design comprising an incomplete circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, incorporating a single gap measuring approximately 10-20mm across.

- Rounded and smooth ridges along the length of the twisted cable portion of the bracelet.

- Located at each open end of the bracelet, a neck comprising an intricate and distinctive pattern giving the appearance of two raised bands of sterling silver, yellow gold, rose gold, or other precious metals, which rise above and encircle the cable starting at the neck and progressing back down the length of the cable in an irregular, snakelike configuration, with the appearance of overlapping one another two or more times, and potentially incorporating a plurality of diamonds or precious stones embedded through the use of a pavé or similar technique.

- A tapered design from each raised neck to the open ends of the bracelet, which are capped in a rounded shape comprising precious stones, minerals, pearls, or precious metals.

**Figure 2 – Examples of Yurman's Helena Neck Trade Dress**



32.     The design elements combined in the Helena Neck Trade Dress as embodied in these and other Yurman jewelry pieces do not provide significant non-reputational or utilitarian benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of these design elements in jewelry pieces impose any significant, non-reputational disadvantage on competitors.

*Trade Dress 3: Yurman's Helena Center Station Trade Dress*

33.     Third, due to Yurman's innovative designs, extensive promotion, and reputation for quality and elegance, the underlying design of certain jewelry pieces from Yurman's Helena Collection and other related collections has become inextricably associated with the Yurman brand and constitutes a protected trade dress (the "Helena Center Station Trade Dress") such that

consumers identify Yurman as the source of any jewelry pieces embodying the Helena Center Station Trade Dress.

34.     Yurman has uninterruptedly sold and marketed numerous jewelry pieces embodying the Helena Center Station Trade Dress since at least 2017, including but not limited to pieces released as part of Yurman's Helena Collection.  Select examples of jewelry pieces embodying the Helena Center Station Trade Dress include: Yurman's Helena Center Station Bracelet in 18K Yellow Gold with Pavé Diamonds; and Yurman's Helena Center Station Bracelet in Sterling Silver with 18K Yellow Gold and Pavé Diamonds (each depicted in Figure 3 below, in which the common elements shared by these examples, described below in paragraph 35, are immediately apparent).

35.     These and other jewelry pieces designed, promoted, and sold by Yurman reflect and embody the Helena Center Station Trade Dress, which includes the following distinctive and non-functional design elements:

- A bracelet design comprising Yurman's signature twisted helix cable configuration, which presents the external appearance of between 6 and 10 individual strands of material entwined with one another to form a single cable.

- A moderately thin (between 2mm and 8mm in thickness), flexible, open cuff bracelet design comprising at least one incomplete circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, incorporating a single gap measuring approximately 10-20mm across.

- Rounded and smooth ridges along the length of the twisted cable portion of the bracelet.

- Located at the center of the loop of the bracelet and immediately opposite the open gap of the bracelet (at the "center station"), an intricate and distinctive design comprising a single raised band of sterling silver, yellow gold, rose gold, or similar precious metals, which rises above the cable and entwines itself around it, starting on one side of the "center station" and twisting around the cable in an irregular, snakelike pattern as it traverses the center station and passes to the other side, including instances where the band twists backwards and passes over itself, at times giving the appearance of two separate bands passing over and under one another, parts of which may also incorporate a plurality of diamonds or precious stones, embedded using a pavé or similar technique.

- A raised neck at each open end of the bracelet design comprising between 1 and 3 raised bands of either sterling silver, yellow gold, rose gold, or similar precious metals, which encircle the cable and may cross over one another in a subtle regular, symmetrical pattern.

- A tapered design from each raised neck to the open ends of the bracelet, which are capped in a rounded shape comprising precious stones, minerals, pearls, or precious metals.

**Figure 3 – Examples of Yurman's Helena Center Station Trade Dress**



Helena Center Station Bracelet in 18K Yellow Gold with Pavé Diamonds

Helena Center Station Bracelet in Sterling Silver with 18K Yellow Gold and Pavé Diamonds

36.     The design elements combined in the Helena Center Station Trade Dress as embodied in these and other Yurman jewelry pieces do not provide significant non-reputational or utilitarian benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of these design elements in jewelry pieces impose any significant, non-reputational disadvantage on competitors.

*Trade Dress 4: Yurman's Renaissance Trade Dress*

37.     Fourth, due to Yurman's innovative designs, extensive promotion, and reputation for quality and elegance, the underlying design of certain jewelry pieces from Yurman's 1993 Collection, Yurman's Renaissance® Collection, The Thoroughbred Collection®, and other related collections has become inextricably associated with the Yurman brand and constitutes a protected trade dress (the "Renaissance Trade Dress") such that consumers identify Yurman as the source of any jewelry pieces embodying the Renaissance Trade Dress.

38.     Yurman has uninterruptedly sold and marketed numerous jewelry pieces embodying the Renaissance Trade Dress since at least 1985, including but not limited to pieces released as part of Yurman's 1993 Collection, Yurman's Renaissance® Collection, and The Thoroughbred Collection®.  Select examples of jewelry pieces embodying the Renaissance

Trade Dress include: Yurman's Renaissance Bracelet No. BO4995; Yurman's 1993 Collection

Bracelet No. B4907; and Yurman's Renaissance Bracelet in Sterling Silver with Amethyst, Pink

Tourmaline, Rhodolite Garnet, and 14K Yellow Gold (each depicted in Figure 4 below, in which

the common elements shared by these examples, described in paragraph 39 below, are

immediately apparent).

39.     These and other jewelry pieces designed, promoted, and sold by Yurman reflect

and embody the Renaissance Trade Dress, which includes the following distinctive and non-

functional design elements:

- A bracelet design comprising Yurman's signature twisted helix cable
  configuration, which presents the external appearance of between 6 and 10
  individual strands of material entwined with one another to form a single cable.

- A flexible, open cuff bracelet design comprising an incomplete circular loop of
  sterling silver, yellow gold, rose gold, or similar precious metals, incorporating a
  single gap measuring approximately 10-20mm across.

- Rounded and smooth ridges along the length of the twisted cable portion of the
  bracelet.

- A raised neck at each open end of the bracelet design comprising at least one
  prominent and wide raised band of sterling silver, yellow gold, rose gold, or
  similar precious metals, which is embedded with precious or semi-precious stones
  cut into the shapes of square-based pyramids, triangle-based pyramids, or other
  distinctive geometric shapes.

- A tapered design from each raised neck to the open ends of the bracelet, which are capped with a prominent rounded or faceted shape comprising precious stones or minerals.

**Figure 4 – Examples of the Renaissance Trade Dress**



40.     The design elements combined in the Renaissance Trade Dress as embodied in these and other Yurman jewelry pieces do not provide significant non-reputational or utilitarian benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of these design elements in jewelry pieces impose any significant, non-reputational disadvantage on competitors.

*Trade Dress 5: The Yurman X Trade Dress*

41.     Fifth, due to Yurman's innovative designs, extensive promotion, and reputation for quality and elegance, the underlying design of certain jewelry pieces from Yurman's 1993 Collection, Yurman's X Collection, and other related collections has become inextricably associated with the Yurman brand and constitutes a protected trade dress (the "Yurman X Trade Dress") such that consumers identify Yurman as the source of any jewelry pieces embodying the Yurman X Trade Dress

42.     Yurman has uninterruptedly sold and marketed numerous jewelry pieces embodying the Yurman X Trade Dress since at least 1993, including but not limited to pieces released as part of Yurman's 1993 Collection and Yurman's X Collection.  Select examples of jewelry pieces embodying the Yurman X Trade Dress include: Yurman's Petite X Bracelet No. B11551D; Yurman's Sterling Silver 14K Yellow Gold Cable Classic X Hoop Earrings; Yurman's X Station Bracelet in Sterling Silver with Pavé Diamonds; and Yurman's Petite X Center Station Bracelet in Sterling Silver with 18K Yellow Gold (each depicted in Figure 5 below, in which the common elements shared by these examples, described in paragraph 44 below, are immediately apparent).

43.     Additional images of jewelry pieces embodying the Yurman X Trade Dress, which were submitted for deposit with the United States Copyright Office, are included in Exhibit A.

44.     These and other jewelry pieces designed, promoted, and sold by Yurman reflect and embody the Yurman X Trade Dress, which includes the following distinctive and non-functional design elements:

- An insignia comprising two gently sloping bands of sterling silver, yellow gold, rose gold, or similar precious metals that cross to form a distinctive "X" insignia.

- The two bands forming the insignia enlarge in diameter to become thicker at their center where they cross, and slightly taper at their ends as they curl around the sides of a bracelet, necklace, ring, earring, or similar jewelry piece into which the insignia is incorporated.

- Multiple small precious stones may be embedded on the entire face of the "X" insignia described above, through the use of a pavé or similar technique.

- The "X" insignia described above is incorporated into a piece of jewelry such as a bracelet, earring, or necklace that includes at least one loop of sterling silver, yellow gold, rose gold, or similar precious metals that reflects either a full or stylized version of Yurman's signature twisted helix cable design, which the "X" insignia described above traverses and around which it partially curls.

**Figure 5 – Examples of the Yurman X Trade Dress**



45.    The design elements combined in the Yurman X Trade Dress as embodied in these and other Yurman jewelry pieces do not provide significant non-reputational or utilitarian benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of these design elements in jewelry pieces impose any significant, non-reputational disadvantage on competitors.

*Trade Dress 6: Yurman's Stacked Cable Trade Dress*

46.    Sixth, due to Yurman's innovative designs, extensive promotion, and reputation for quality and elegance, the underlying design of certain jewelry pieces from Yurman's The Crossover Collection® and other related collections has become inextricably associated with the Yurman brand and constitutes a protected trade dress (the "Stacked Cable Trade Dress") such

that consumers identify Yurman as the source of any jewelry pieces embodying the Stacked Cable Trade Dress.

47.      Yurman has uninterruptedly sold and marketed numerous jewelry pieces embodying the Stacked Cable Trade Dress since at least 1998, including but not limited to pieces released as part of Yurman's The Crossover Collection®.  Select examples of jewelry pieces embodying the Stacked Cable Trade Dress include: Yurman's Crossover Three Row Cuff Bracelet in Sterling Silver with 18K Yellow Gold; Yurman's Crossover Cuff Bracelet in Sterling Silver with 18K Yellow Gold; Yurman's Crossover Four Row Cuff Bracelet in Sterling Silver with Pavé Diamonds; and Yurman's Crossover Cuff Bracelet in Sterling Silver with Pavé Diamonds (each depicted in Figure 6 below, in which the common elements shared by these examples, described in paragraph 48 below, are immediately apparent).

48.      These and other jewelry pieces designed, promoted, and sold by Yurman reflect and embody the Stacked Cable Trade Dress, which includes the following distinctive and non-functional design elements:

- A flexible, open cuff bracelet design comprising a plurality of bracelet loops (between 3 and 15), each comprising an incomplete circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, each incorporating a single gap measuring approximately 10-20mm across.

- Some but not all of the loops comprising the bracelet embody Yurman's signature twisted helix cable configuration, while other of the loops are smooth.

- The loops comprising the bracelet are stacked in an irregular pattern one on top of the other with different sized gaps between each successive set of loops to present a dynamic and unconventional asymmetric appearance for the bracelet.

- The loops are all connected by a smooth end cap comprising sterling silver, yellow gold, rose gold, or similar precious metals located at and covering each open end of the bracelet, which offers the impression of one or two elongated bands of metal that may present a relatively flat face or may taper to the end of the bracelet, connecting the separate loops to form a single overall jewelry piece constituting a flexible, open cuff bracelet design.

- A bold, voluminous design incorporating rounded and smooth ridges along the length of the twisted cable portions and end caps of the bracelet.

**Figure 6 – Examples of Yurman's Stacked Cable Trade Dress**



49.     The design elements combined in the Stacked Cable Trade Dress as embodied in these and other Yurman jewelry pieces do not provide significant non-reputational or utilitarian benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of

these design elements in jewelry pieces impose any significant, non-reputational disadvantage on competitors.

### *Trade Dress 7: Yurman's Crossover Trade Dress*

50.    Seventh, due to Yurman's innovative designs, extensive promotion, and reputation for quality and elegance, the underlying design of certain jewelry pieces from Yurman's The Crossover Collection®, Yurman's X Collection, and other related collections has become inextricably associated with the Yurman brand and constitutes a protected trade dress (the "Crossover Trade Dress") such that consumers identify Yurman as the source of any jewelry pieces embodying the Crossover Trade Dress.

51.    Yurman has uninterruptedly sold and marketed numerous jewelry pieces embodying the Crossover Trade Dress since at least 1998, including but not limited to pieces released as part of Yurman's The Crossover Collection® and Yurman's X Collection.  Select examples of jewelry pieces embodying the Crossover Trade Dress include: Yurman's Crossover Two Row Cuff Bracelet in Sterling Silver with 18K Yellow Gold; and Yurman's Crossover Bracelet in Sterling Silver with 18K Yellow Gold (each depicted in Figure 7 below, in which the common elements shared by these examples, described in paragraph 52 below, are immediately apparent).

52.    These and other jewelry pieces designed, promoted, and sold by Yurman reflect and embody the Crossover Trade Dress, which includes the following distinctive and non-functional design elements:

- A flexible, open cuff bracelet design comprising a small number of bracelet loops (between 2 and 3), each comprising an incomplete circular loop of sterling silver,

yellow gold, rose gold, or similar precious metals, and each incorporating a single gap measuring approximately 10-20mm across.

- Some but not all of the loops comprising the bracelet embody Yurman's signature twisted helix cable configuration, while other of the loops are smooth.

- Rounded and smooth ridges along the length of the twisted cable portion of the bracelet.

- The loops comprising the bracelet are stacked on top of one another in a tightly connected configuration, which allows a viewer to simultaneously distinguish between the separate loops while also presenting either no gaps or only very small gaps separating the stacked loops from one another.

- At least one of the loops comprising the bracelet is angled in such a way as to pass over or under one of the other loops comprising the bracelet, to create a dynamic and at times asymmetric presentation.

- The loops comprising the bracelet may vary in terms of their materials, for example with one loop consisting of sterling silver, while another loop in the same bracelet may consist of yellow gold.

- The loops are all connected by a smooth end cap comprising sterling silver, yellow gold, rose gold, or similar precious metals located at and covering each open end of the bracelet, which offers the impression of one or two elongated bands of metal that may present a relatively flat face or may taper to the end of the bracelet, connecting the separate loops to form a single overall jewelry piece constituting a flexible, open cuff bracelet design.

**Figure 7 – Examples of Yurman's Crossover Trade Dress**



Crossover Two Row Cuff Bracelet
in Sterling Silver with 18K Yellow Gold

Crossover Bracelet in Sterling Silver
with 18K Yellow Gold

53.     The design elements combined in the Crossover Trade Dress as embodied in these
and other Yurman jewelry pieces do not provide significant non-reputational or utilitarian
benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of
these design elements in jewelry pieces impose any significant, non-reputational disadvantage on
competitors.

*Trade Dress 8: Yurman's Alternating Cable Chain Trade Dress*

54.     Eighth, due to Yurman's innovative designs, extensive promotion, and reputation
for quality and elegance, the underlying design of certain jewelry pieces from Yurman's Chain
Collection for Women, Yurman's Tahitian Bijoux Collection, Yurman's DY Madison®
Collection, and other related collections has become inextricably associated with the Yurman
brand and constitutes a protected trade dress (the "Alternating Cable Chain Trade Dress") such
that consumers identify Yurman as the source of any jewelry pieces embodying the Alternating
Cable Chain Trade Dress

55.     Yurman has uninterruptedly sold and marketed numerous jewelry pieces
embodying the Alternating Cable Chain Trade Dress since at least 2002, including but not
limited to pieces released as part of Yurman's Chain Collection for Women, Yurman's Tahitian

25

Bijoux Collection, and Yurman's DY Madison® Collection.  Select examples of jewelry pieces embodying the Alternating Cable Chain Trade Dress include: Yurman's 2005 Chain Collection Necklace No. CH0178; Yurman's Tahitian Bijoux Necklace No. CH0144; Yurman's Oval Link Chain Necklace in Sterling Silver with 18K Yellow Gold; Yurman's DY Madison Chain Necklace in Sterling Silver; Yurman's DY Madison Chain Bracelet in 18K Yellow Gold; and Yurman's DY Madison Chain Bracelet in Sterling Silver with 18K Yellow Gold (each depicted in Figure 8 below, in which the common elements shared by these examples, described in paragraph 56 below, are immediately apparent).

56.     These and other jewelry pieces designed, promoted, and sold by Yurman reflect and embody the Alternating Cable Chain Trade Dress, which includes the following distinctive and non-functional design elements:

- A necklace or bracelet comprising a chain of interconnected circular, oval, and/or elongated oval chain links of sterling silver, yellow gold, rose gold, or similar precious metals.

- Certain chain links embody a full or stylized version of Yurman's signature twisted helix cable design, but are connected to other links that do not embody that design and are instead smooth—with the twisted helix cable links connecting in an alternating or otherwise predictable pattern with smooth links, creating an elaborate but symmetrical or regular overall design for the jewelry piece.

- The different chain links comprising the bracelet or necklace may vary in terms of their materials.  For example, in a single bracelet the chain links embodying the Yurman twisted helix cable design may consist of sterling silver, while the smooth chain links to which they are connected may consist of yellow gold.

**Figure 8 – Examples of Yurman's Alternating Cable Chain Trade Dress**



57.     The design elements combined in the Alternating Cable Chain Trade Dress as embodied in these and other Yurman jewelry pieces do not provide significant non-reputational or utilitarian benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of these design elements in jewelry pieces impose any significant, non-reputational disadvantage on competitors.

*Trade Dress 9: Yurman's Adorned Bracelet Trade Dress*

58.     Ninth, due to Yurman's innovative designs, extensive promotion, and reputation for quality and elegance, the underlying design of certain jewelry pieces from Yurman's Châtelaine® collection, Yurman's Cable Collectibles® collection, and other related collections has become inextricably associated with the Yurman brand and constitutes a protected trade dress (the "Adorned Bracelet Trade Dress") such that consumers identify Yurman as the source of any jewelry pieces embodying the Adorned Bracelet Trade Dress

59.     Yurman has uninterruptedly sold and marketed numerous jewelry pieces embodying the Adorned Bracelet Trade Dress since at least 2002, including but not limited to pieces released as part of Yurman's Châtelaine® collection and Yurman's Cable Collectibles® collection.  Select examples of jewelry pieces embodying the Adorned Bracelet Trade Dress include: Yurman's Châtelaine Bracelet in Sterling Silver with Amethyst and Pavé Diamonds; Yurman's Petite Châtelaine Bracelet in Sterling Silver with Black Orchid; Yurman's Cable Collectibles Heart Bracelet in Sterling Silver with Pavé Diamonds; and Yurman's Cable Collectibles Heart Bracelet in Sterling Silver with 18K Yellow Gold (each depicted in Figure 9 below, in which the common elements shared by these examples, described in paragraph 60 below, are immediately apparent).

60.     These and other jewelry pieces designed, promoted, and sold by Yurman reflect and embody the Adorned Bracelet Trade Dress, which includes the following distinctive and non-functional design elements:

- A bracelet design comprising Yurman's signature twisted helix cable configuration, which presents the external appearance of between 6 and 10 individual strands of material entwined with one another to form a single cable.

- A thin (between 2mm and 6mm in thickness) closed bracelet design comprising a circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, and closed by the distinctive insignia described below.

- Rounded and smooth ridges along the length of the twisted cable portion of the bracelet.

- Connected to one end of the bracelet either directly or using a flexible chain link connection, an adornment piece comprising either a smooth or faceted precious stone or mineral (such as amethyst or black orchid) or a heart.

- Located on one side of or underneath the adornment piece, a smooth hoop of metal that can receive a hook.

- On the side of the bracelet that is not permanently affixed to the adornment piece, a raised neck comprising one or more bands of sterling silver, yellow gold, rose gold, or other precious metal that rises above the plane of the bracelet, which is attached to a hook of the same material.

**Figure 9 – Examples of Yurman's Adorned Bracelet Trade Dress**



61.     The design elements combined in the Adorned Bracelet Trade Dress as embodied in these and other Yurman jewelry pieces do not provide significant non-reputational or

utilitarian benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of these design elements in jewelry pieces impose any significant, non-reputational disadvantage on competitors.

*Trade Dress 10: Yurman's Streamline Tag Trade Dress*

62.    Tenth, due to Yurman's innovative designs, extensive promotion, and reputation for quality and elegance, the underlying design of certain jewelry pieces from Yurman's Streamline® collection and other related collections has become inextricably associated with the Yurman brand and constitutes a protected trade dress (the "Streamline Tag Trade Dress") such that consumers identify Yurman as the source of any jewelry pieces embodying the Streamline Tag Trade Dress.

63.    Yurman has uninterruptedly sold and marketed numerous jewelry pieces embodying the Streamline Tag Trade Dress since at least 2019, including but not limited to pieces released as part of Yurman's Streamline® collection.  Select examples of jewelry pieces embodying the Streamline Tag Trade Dress include: Yurman's Streamline Tag in 18K Yellow Gold; and Yurman's Streamline Tag in 18K Yellow Gold with Diamond Baguettes (each depicted in Figure 10 below, in which the common elements shared by these examples, described in paragraph 64 below, are immediately apparent).

64.    These and other jewelry pieces designed, promoted, and sold by Yurman reflect and embody the Streamline Tag Trade Dress, which includes the following distinctive and non-functional design elements:

- A pendant comprising an elongated oblong oriented such that the long sides of the oblong hang vertically downwards, with the shorter sides of the oblong located at

the top and bottom of the pendant exhibiting a gentle convex curve compared with the straight lines characterizing the longer sides of the oblong.

- A small aperture near the top of the pendant, by which the pendant is attached to an elegant and smooth bail, which in turn is connected to a necklace chain.

- The pendant, bail, and necklace chain all comprising sterling silver, yellow gold, rose gold, or other precious metals.

- One face of the pendant exhibiting a flat, matte face of the metal from which the pendant is made.

- On the obverse side of the pendant, a chevron pattern comprising alternately raised and sunken sculpted ridges in the precious metal, presenting as a single line of inverted chevrons descending along the entire vertical length of the pendant, and connected by a central ridge running down the center of the pendant.

- All edges and corners of the pendant exhibit smooth but decisive joints.

**Figure 10 – Examples of the Streamline Tag Trade Dress**



65.     The design elements combined in the Streamline Tag Trade Dress as embodied in these and other Yurman jewelry pieces do not provide significant non-reputational or utilitarian benefits either to Yurman or to consumers; nor does Yurman's exclusive use and combination of these design elements in jewelry pieces impose any significant, non-reputational disadvantage on competitors.

*Yurman's Investment in the Yurman Trade Dress*

66.     Yurman products embodying the Cable Classic Trade Dress, the Helena Neck Trade Dress, the Helena Center Station Trade Dress, the Renaissance Trade Dress, the Yurman X Trade Dress, the Stacked Cable Trade Dress, the Crossover Trade Dress, the Alternating Cable Chain Trade Dress, the Adorned Bracelet Trade Dress, and the Streamline Tag Trade Dress (collectively, the "Yurman Trade Dress") are sold throughout the United States, including via third-party retailers like Neiman Marcus and Nordstrom, and direct-to-consumer by Yurman through its retail locations and publicly-accessible website.

67.     Yurman advertises products incorporating the Yurman Trade Dress extensively. Such advertisements include print advertisements in local, regional, and national magazines and newspapers, digital advertisements such as social media and influencer posts, and direct advertising via email and digital search ads.  Yurman has spent millions of dollars on such advertising.

68.     Examples of advertisements of products incorporating the Yurman Trade Dress include iconic print campaigns featuring supermodel Kate Moss, billboards in major American cities across the country, and catalog-style at-home mailers.

69.     These efforts have led to sales of products incorporating the Yurman Trade Dress amounting to hundreds of millions of dollars.

70.     The Yurman Trade Dress is not essential to the use or purpose of the jewelry pieces that incorporate it, and it does not affect the jewelry pieces' cost or quality.  There are countless alternative jewelry designs that are feasible and as cost-effective to produce as the designs incorporating the Yurman Trade Dress.  Such alternative designs have been and are used by numerous other jewelry designers and manufacturers, including Yurman's competitors.

71.     The Yurman Trade Dress has achieved a high degree of consumer recognition and secondary meaning through Yurman's widespread use, sale, advertising, and promotion of jewelry pieces embodying the Yurman Trade Dress.  The Yurman Trade Dress does not provide any significant non-reputational advantages to Yurman, nor any utilitarian advantages for the consumer, and Yurman's exclusive usage of the Yurman Trade Dress does not put any competitor at a significant non-reputation-related disadvantage.  Rather, the Yurman Trade Dress renders Yurman jewelry pieces embodying that trade dress distinctive and causes consumers to recognize those jewelry pieces as goods originating from Yurman.

**Yurman's Registered Copyrights**

72.     In addition to unregistered trade dress, Yurman's designs are protected by copyright and trademark registrations.

73.     A number of expressions of the Yurman Trade Dress (the "Yurman Trade Dress Copyright Designs") constitute original works of authorship created by Yurman and protected by copyright.

74.     Yurman has applied for and obtained from the United States Copyright Office the following copyright registrations relating to the Yurman Trade Dress Copyright Designs (the "Yurman Trade Dress Copyrights"):

- U.S. Copyright Registration No. VA 913-509, issued on July 1, 1997, for Yurman's Renaissance Bracelet No. B4995.

- U.S. Copyright Registration No. VAu 405-161, issued on January 23, 1998, for the Yurman 1993 Collection, and supplemented by U.S. Copyright Registration No. VAu 757-597 on May 3, 2012.

- U.S. Copyright Registration No. VA 1-038-299, issued on October 6, 1999, for The Thoroughbred Collection, Bracelet No. B4425, and supplemented by U.S. Copyright Registration No. VA 1-210-837 on August 4, 2003.

- U.S. Copyright Registration No. VA 1-876-304, issued on January 22, 2013, for Yurman's Petite X Collection.

- U.S. Copyright Registration No. VA 1-282-483, issued on November 6, 2003, for Yurman's Tahitian Bijoux Collection, and supplemented by U.S. Copyright Registration No. VA 1-378-617 on May 8, 2006.

- U.S. Copyright Registration No. VA 1-344-440, issued on June 17, 2005, for Yurman's Chain I Collection, and supplemented by U.S. Copyright Registration No. VA 1-378-631 on May 8, 2006.

75.    Printouts detailing the registrations of the Yurman Trade Dress Copyrights are attached hereto as Exhibit B.

76.    Accordingly, numerous Yurman jewelry items are protected both as embodiments of unregistered trade dress and by registered copyrights.

77.    Two of the exemplary Yurman jewelry items embodying the Cable Classic Trade Dress displayed in Figure 1 are also covered by copyright registration numbers VAu 405-161 and VA 1-038-299.  These items, which are protected by the Yurman Trade Dress Copyrights in addition to being protected as embodiments of the Cable Classic Trade Dress, are listed in Figure 11 below.

**Figure 11 – Yurman Items Protected by VAu 405-161 and VA 1-038-299**



78.    One of the exemplary Yurman jewelry items embodying the Yurman X Trade Dress displayed in Figure 5 is also covered by copyright registration number VAu 405-161.  This item, which is protected by the Yurman Trade Dress Copyrights in addition to being protected as an embodiment of the Yurman X Trade Dress, is listed in Figure 12 below.

**Figure 12 – Additional Yurman Item Protected by VAu 405-161**



79.     And, copyright registration number VAu-405-161 also covers the design

embodied in the Yurman jewelry item included in Figure 13 (the "Cable Hook Copyright

Design").  This item is not an embodiment of the Yurman Trade Dress, however.

**Figure 13 – Cable Hook Copyright Design Item Protected by VAu 405-161**



80.     Next, one of the exemplary Yurman jewelry items embodying the Yurman X

Trade Dress displayed in Figure 5 is also covered by copyright registration number VA 1-876-

304.  This item, which is protected by the Yurman Trade Dress Copyrights in addition to being

protected as an embodiment of the Yurman X Trade Dress, is listed in Figure 14 below.

**Figure 14 – Yurman Item Protected by VA 1-876-304**



81.     One of the exemplary Yurman jewelry items embodying the Renaissance Trade

Dress displayed in Figure 4 is also covered by copyright registration number VA 913-509, while

another is also covered by copyright registration number VAu 405-161.  These items, which are

protected by the Yurman Trade Dress Copyrights in addition to being protected as embodiments

of the Renaissance Trade Dress, are listed in Figure 15 below.

**Figure 15 – Yurman Items Protected by VA 913-509 and VAu 405-161**



82.     Several of the exemplary Yurman jewelry items embodying the Alternating Cable Chain Trade Dress displayed in Figure 8 are also covered by copyright registration numbers VA 1-282-483 and VA 1-344-440.  These items, which are protected by the Yurman Trade Dress Copyrights in addition to being protected as embodiments of the Alternating Cable Chain Trade Dress, are listed in Figure 16 below.

**Figure 16 – Yurman Items Protected by VA 1-282-483 and VA 1-344-440**



*Yurman's Petite X Earrings Copyright*

83.     Yurman also owns U.S. Copyright Registration No. VA 1-935-472, issued on November 17, 2014, for Yurman's Petite X 2014 Collection, relating to the design embodied in

the Yurman jewelry item included in Figure 17 (the "Petite X Earrings Copyright," relating to the "Petite X Earrings Copyright Design").

**Figure 17 – Yurman Item Protected by the Petite X Earrings Copyright**



**Petite X 2014 Earrings**

**Copyright Registration No. VA 1-935-472**

84.    A printout detailing the registration of the Petite X Earrings Copyright is attached hereto as Exhibit C.

**<u>Yurman's Registered Trademarks</u>**

85.    Yurman holds Trademark Registration No. 4,655,095 for its Twisted Cable Bracelet design (the "Cable Bracelet Trademark"), issued on December 16, 2014.

86.    The Cable Bracelet Trademark is incontestable pursuant to 15 U.S.C. § 1065.

87.    Figure 18 below is an image of a Yurman product embodying the design covered by the Cable Bracelet Trademark.

**Figure 18 – Yurman Product Covered by the Cable Bracelet Trademark**



88.     The description accompanying the Cable Bracelet Trademark registration is as

follows:

> The mark consists of an open twisted-cable bracelet design with faceted
> stones at each end.  The portions of the bracelet shown in broken lines are
> intended solely to indicate the positioning of the mark and are not part of
> the mark.  Color is not claimed as a feature of the mark.

89.     Yurman also holds Trademark Registration No. 5,025,164 for its Renaissance

Cable Bracelet design (the "Renaissance Cable Trademark"), issued on August 23, 2016.

90.     The Renaissance Cable Trademark is incontestable pursuant to 15 U.S.C. § 1065.

91.     Figure 19 below is an image of a design covered by the Renaissance Cable

Trademark.

**Figure 19 – Yurman Product Covered by the Renaissance Cable Trademark**



92.     The description accompanying the Renaissance Cable Trademark registration is

as follows:

> Color is not claimed as a feature of the mark. The mark consists of an open twisted-cable bracelet design. At each end is a neck with a diamond-shaped element on the top and oval-shaped elements on the sides. In between the diamond-shaped and oval-shaped elements are two raised beads positioned in an axis parallel to that of the longer axis of the oval. The neck is bordered on each side by two thin circular bands. The portions of the bracelet shown in broken lines are intended solely to indicate the positioning of the mark and are not part of the mark. Further, the materials from which the design is made are not a feature of the mark.

93.     Yurman also holds Trademark Registration No. 6,949,960 for the use of the term

"Renaissance" (the "Renaissance Word Mark"), issued on January 10, 2023.

94.     The Renaissance Word Mark covers the use of the term "Renaissance" in the field

of fine jewelry, and the Registration Certificate describes the mark as: "consist[ing] of standard

characters without claim to any particular font style, size, or color."

95.     Registration statements for the Cable Bracelet Trademark, the Renaissance Cable

Trademark, and the Renaissance Word Mark (together, the "Yurman Marks") are included in

Exhibit D.

42

96.     Yurman is the owner of all rights in and to the Yurman Marks, which are used in connection with the manufacture and distribution of certain distinctive and high-quality cable bracelets embodying the Yurman Trade Dress.

97.     The Yurman Marks are used in interstate commerce to identify and distinguish Yurman's high-quality cable bracelets.  Products embodying the elements protected by the Yurman Marks have been designed, marketed, and sold by Yurman for an extended period, since as early as 1989.  Yurman has used the Yurman Marks in commerce long prior to Defendant's use of a copy of the Yurman Marks.  The Yurman Marks have never been assigned or licensed to Defendant.

98.     Like its other trademarks, the Yurman Marks are a symbol of Yurman's quality, reputation, and goodwill.  Yurman has carefully monitored and policed the use of its trademarks, including the Yurman Marks, and has never abandoned the Yurman Marks.

99.     Yurman correspondingly expends substantial resources and efforts in developing, advertising, and otherwise promoting the Yurman Marks.  Yurman also extensively uses, advertises, and promotes the Yurman Marks in the United States in association with the sale of high-quality cable bracelets.  Yurman has expended significant resources promoting the Yurman Marks and products bearing and/or using the Yurman Marks in print media, on the Internet, in social media, and via its official website, davidyurman.com.  From 1989 through the present, annual sales of products bearing and/or using the Yurman Marks have totaled well into the tens of millions of dollars within the United States.

100.    As a result of Yurman's efforts, consumers and members of the public readily identify merchandise bearing or sold using the Yurman Marks as high-quality goods sponsored and approved by Yurman.

101.    Accordingly, the Yurman Marks have achieved secondary meaning among consumers as an identifier of high-quality goods sponsored and approved by Yurman.

### INFRINGEMENT OF THE YURMAN TRADE DRESS, COPYRIGHTS, AND TRADEMARKS

102.    Upon information and belief, Defendant is an importer, manufacturer, and distributor of jewelry that primarily sells jewelry items to wholesalers and retailers.  It bills itself as the "industry's leading supplier of gold jewelry," founded by Paul Maroof in or around 1978, and historically heavily focused on the importation, manufacture, and sale of gold jewelry.  In more recent years, however, it appears to have shifted its focus to knocking off Yurman pieces. It is a competitor of Yurman.

103.    On further information and belief, the majority of the jewelry items offered for sale by Defendant are sold wholesale under the "Royal Chain" brand.  However, Defendant offers at least one other branded line: the "Phillip Gavriel" line of jewelry, which launched in or around 2010.

104.    In addition to being marketed alongside the Royal Chain-branded collections on Defendant's primary website at royalchain.com, the Phillip Gavriel line is also marketed (and sold) through a standalone website at phillipgavriel.com.

105.    That website reports that the brand was launched by "designer Phillip Gavriel" in 2010.  On information and belief, "Phillip Gavriel" is a pseudonym for Phillip Gabriel Maroof, the son of Royal Chain founder Paul Maroof.

106.    On further information and belief, Mr. Phillip Gabriel Maroof is not a trained artist like the founders of Yurman but has instead worked consistently for his father's company since his graduation from college with a bachelor's degree in marketing in 2003.

107.    Mr. Phillip Gabriel Maroof claims that the Phillip Gavriel line is "inspired by his experiences and travels across the world."  In reality, much of the Phillip Gavriel line knocks off iconic Yurman jewelry pieces, as do many Royal Chain wholesale pieces.

108.    Specifically, Defendant has sold and sells numerous products that blatantly copy the Yurman Trade Dress and infringe upon the Yurman Trade Dress Copyrights (including by copying the Cable Hook Copyright Design), the Petite X Earrings Copyright, and the Yurman Marks.

109.    The degree to which Defendant has copied each piece—incorporating the most minor details in addition to overall design and look and feel—and the frequency of the copying—across numerous collections and types of jewelry—make clear that this is no coincidence, and has no benign explanation.  Instead, the inescapable conclusion is that Defendant has in effect formed an essential part of its business model around providing Yurman knock-offs to consumers.

110.    Upon information and belief, Defendant has done so to exploit the reputation for quality, elegance, and luxury that accompanies the Yurman brand.

111.    Yurman has not granted a license or any other form of permission to Defendant with respect to any of the Yurman Trade Dress, the Yurman Trade Dress Copyrights, the Petite X Earrings Copyright, or the Yurman Marks.

**Infringement of Yurman's Trade Dress**

*Infringement of Yurman's Cable Classic Trade Dress*

112.    Defendant's infringement of Yurman's Cable Classic Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the Sterling Silver & 18K Gold Italian Cable Stackable Cuff Bangle, the Sterling Silver & 18K Gold Classica

Italian Cable Bangle, the Silver and 18K Gold Italian Cable Classic Cuff Bangle, the Silver and

Diamond Italian Cable Classic Bracelet, the Silver and 18K Gold Italian Cable Pearl Bracelet,

the Silver and 18K Gold Cable Bracelet with Diamonds, the Abbraccio Diamond Bangle in

Sterling Silver and 18K Gold, and similar jewelry products that share the configuration, design,

coloring, and ornamentation of Cable Classic Trade Dress embodiments.  The Sterling Silver &

18K Gold Italian Cable Stackable Cuff Bangle, the Sterling Silver & 18K Gold Classica Italian

Cable Bangle, the Silver and 18K Gold Italian Cable Classic Cuff Bangle, the Silver and

Diamond Italian Cable Classic Bracelet, the Silver and 18K Gold Italian Cable Pearl Bracelet,

the Silver and 18K Gold Cable Bracelet with Diamonds, and the Abbraccio Diamond Bangle in

Sterling Silver and 18K Gold share the following distinct design and non-functional elements

with numerous embodiments of the Cable Classic Trade Dress, as reflected in Figure 20 below:

- A bracelet design comprising a twisted helix cable configuration, which presents
  the external appearance of between 6 and 10 individual strands of material
  entwined with one another to form a single cable.

- A relatively thin (between 3mm and 8mm in thickness), flexible, open cuff
  bracelet design, comprising an incomplete circular loop of sterling silver, yellow
  gold, rose gold, or similar precious metals, incorporating a single gap measuring
  approximately 10-20mm across.

- Rounded and smooth ridges along the length of the twisted cable portion of the
  bracelet.

- A raised neck at each open end of the bracelet design comprising between 2 and 5
  raised bands of sterling silver, yellow gold, rose gold, or similar precious metals,

the central band of which may be wider than the other bands and embedded with precious stones.

- A tapered design from each raised neck to the open ends of the bracelet, which are capped in a rounded shape comprising precious stones, minerals, pearls, or precious metals.

**Figure 20 – Comparison of Defendant Products and
Yurman Cable Classic Trade Dress Products**



113.    The blatant similarities between the legitimate items embodying Yurman's Cable Classic Trade Dress and the infringing items sold by Defendant are immediately apparent.

114.    The similarities between the legitimate items embodying Yurman's Cable Classic Trade Dress and the infringing items sold by Defendant are so striking that consumers have been and will continue to be confused into believing that the infringing Phillip Gavriel/Royal Chain items were designed and sold by Yurman, and represent the reputation for quality, elegance, and luxury that is synonymous with the Yurman brand.

*Infringement of Yurman's Helena Neck Trade Dress*

115.     Defendant's infringement of Yurman's Helena Neck Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the Silver & 18K Gold Gemstone Filo Bangle, and similar jewelry products, which share the configuration, design, coloring, and ornamentation of Helena Neck Trade Dress embodiments.  The Silver & 18K Gold Gemstone Filo Bangle shares the following distinct design elements with other embodiments of the Helena Neck Trade Dress, as reflected in Figure 21 below:

- A bracelet design comprising a twisted helix cable configuration, which presents the external appearance of between 6 and 10 individual strands of material entwined with one another to form a single cable.

- A relatively thin (between 2mm and 6mm in thickness), flexible, open cuff bracelet design comprising an incomplete circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, incorporating a single gap measuring approximately 10-20mm across.

- Rounded and smooth ridges along the length of the twisted cable portion of the bracelet.

- Located at each open end of the bracelet, a neck comprising an intricate and distinctive pattern giving the appearance of two raised bands of sterling silver, yellow gold, rose gold, or other precious metals, which rise above and encircle the cable starting at the neck and progressing back down the length of the cable in an irregular, snakelike configuration, with the appearance of overlapping one another two or more times, and potentially incorporating a plurality of diamonds or precious stones embedded through the use of a pavé or similar technique.

- A tapered design from each raised neck to the open ends of the bracelet, which are capped in a rounded shape comprising precious stones, minerals, pearls, or precious metals.

**Figure 21 – Comparison of Defendant Product and
Yurman Helena Neck Trade Dress Products**



116.     The blatant similarities between the legitimate items embodying Yurman's Helena Neck Trade Dress and the infringing item sold by Defendant are immediately apparent.

117.     The similarities between the legitimate items embodying Yurman's Helena Neck Trade Dress and the infringing item sold by Defendant are so striking that consumers have been

and will continue to be confused into believing that the infringing Phillip Gavriel/Royal Chain item was designed and sold by Yurman, and represents the reputation for quality, elegance, and luxury that is synonymous with the Yurman brand.

<u>*Infringement of Yurman's Helena Center Station Trade Dress*</u>

118.    Defendant's infringement of Yurman's Helena Center Station Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the Silver and Diamond Italian Cable Filo Bracelet, the Silver & 18K Bold Filo Bracelet, and the Silver & Diamond Italian Cable Double Filo Bracelet, and similar jewelry products, which share the configuration, design, coloring, and ornamentation of Helena Center Station Trade Dress embodiments.  The Silver and Diamond Italian Cable Filo Bracelet, the Silver & 18K Bold Filo Bracelet, and the Silver & Diamond Italian Cable Double Filo Bracelet share the following distinct design elements with other embodiments of the Helena Neck Trade Dress, as reflected in Figure 22 below:

- A bracelet design comprising a twisted helix cable configuration, which presents the external appearance of between 6 and 10 individual strands of material entwined with one another to form a single cable.

- A moderately thin (between 2mm and 8mm in thickness), flexible, open cuff bracelet design comprising at least one incomplete circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, incorporating a single gap measuring approximately 10-20mm across.

- Rounded and smooth ridges along the length of the twisted cable portion of the bracelet.

- Located at the center of the loop of the bracelet and immediately opposite the open gap of the bracelet (at the "center station"), an intricate, and distinctive design comprising a single raised band of sterling silver, yellow gold, rose gold, or similar precious metals, which rises above the cable and entwines itself around it, starting on one side of the "center station" and twisting around the cable in an irregular, snakelike pattern as it traverses the center station and passes to the other side, including instances where the band twists backwards and passes over itself, at times giving the appearance of two separate bands passing over and under one another, parts of which may also incorporate a plurality of diamonds or precious stones, embedded using a pavé or similar technique.

- A raised neck at each open end of the bracelet design comprising between 1 and 3 raised bands of either sterling silver, yellow gold, rose gold, or similar precious metals, which encircle the cable and may cross over one another in a subtle regular, symmetrical pattern.

- A tapered design from each raised neck to the open ends of the bracelet, which are capped in a rounded shape comprising precious stones, minerals, pearls, or precious metals.

**Figure 22 – Comparison of Defendant Products and
Yurman Helena Center Station Trade Dress Products**



119.    The blatant similarities between the legitimate items embodying Yurman's Helena

Center Station Trade Dress and the infringing items sold by Defendant are immediately apparent.

120.    The similarities between the legitimate items embodying Yurman's Helena Center

Station Trade Dress and the infringing items sold by Defendant are so striking that consumers

have been and will continue to be confused into believing that the infringing Phillip

Gavriel/Royal Chain items were designed and sold by Yurman, and represent the reputation for

quality, elegance, and luxury that is synonymous with the Yurman brand.

*Infringement of the Renaissance Trade Dress*

121.    Defendant's infringement of the Renaissance Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the Silver & 18K Gold Italian Cable Renaissance Gemstone Bracelet (Warm Tones), the Silver & 18K Gold Italian Cable Renaissance Gemstone Bracelet (Cool Tones), and other similar jewelry products, which share the configuration, design, coloring, and ornamentation of Renaissance Trade Dress embodiments.  The Silver & 18K Gold Italian Cable Renaissance Gemstone Bracelet (Warm Tones) and the Silver & 18K Gold Italian Cable Renaissance Gemstone Bracelet (Cool Tones) share the following distinct design elements with other embodiments of the Renaissance Trade Dress, as reflected in Figure 23 below:

- A bracelet design comprising a twisted helix cable configuration, which presents the external appearance of between 6 and 10 individual strands of material entwined with one another to form a single cable.

- A flexible, open cuff bracelet design comprising an incomplete circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, incorporating a single gap measuring approximately 10-20mm across.

- A raised neck at each open end of the bracelet design comprising at least one prominent and wide raised band of sterling silver, yellow gold, rose gold, or similar precious metals, which is embedded with precious or semi-precious stones cut into the shapes of square-based pyramids, triangle-based pyramids, or other distinctive geometric shapes.

- A tapered design from each raised neck to the open ends of the bracelet, which are capped with a prominent shape comprising precious stones or minerals.

**Figure 23 – Comparison of Defendant Products and Renaissance Trade Dress Products**



122.    The blatant similarities between the legitimate items embodying the Renaissance Trade Dress and the infringing items sold by Defendant are immediately apparent.

123.    The similarities between the legitimate items embodying the Renaissance Trade Dress and the infringing items sold by Defendant are so striking that consumers have been and will continue to be confused into believing that the infringing Phillip Gavriel/Royal Chain items were designed and sold by Yurman, and represent the reputation for quality, elegance, and luxury that is synonymous with the Yurman brand.

*Infringement of the Yurman X Trade Dress*

124.    Defendant's infringement of the Yurman X Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the Silver & 18K Gold Three-Row Cable Abbraccio Bracelet, the Silver and Diamond Cable X Cuff, the 18K Gold Italian Bangle, the Silver Cable Hook X Earrings, and similar jewelry products, which share the configuration, design, coloring, and ornamentation of Yurman X Trade Dress embodiments.  The Silver & 18K Gold Three-Row Cable Abbraccio Bracelet, the Silver and Diamond Cable X Cuff, the 18K Gold Italian Bangle, and the Silver Cable Hook X Earrings share the following distinct and non-functional design elements with other embodiments of the Yurman X Trade Dress, as reflected in Figure 24 below:

- An insignia comprising two gently sloping bands of sterling silver, yellow gold, rose gold, or similar precious metals that cross to form a distinctive "X" insignia.

- The two bands forming the insignia enlarge in diameter to become thicker at their center where they cross, and slightly taper at their ends as they curl around the sides of a bracelet, necklace, ring, earring, or similar jewelry piece into which the insignia is incorporated.

- Multiple small precious stones may be embedded on the entire face of the "X" insignia described above, through the use of a pavé or similar technique.

- The "X" insignia described above is incorporated into a piece of jewelry such as a bracelet, earring, or necklace that includes at least one loop of sterling silver, yellow gold, rose gold, or similar precious metals that reflects either a full or stylized version of Yurman's signature twisted helix cable design, which the "X" insignia described above traverses and around which it partially curls.

**Figure 24 – Comparison of Defendant Products and Yurman X Trade Dress Products**



125.    The blatant similarities between the legitimate items embodying the Yurman X Trade Dress and the infringing items sold by Defendant are immediately apparent.

126.    The similarities between the legitimate items embodying the Yurman X Trade Dress and the infringing items sold by Defendant are so striking that consumers have been and will continue to be confused into believing that the infringing Phillip Gavriel/Royal Chain items were designed and sold by Yurman, and represent the reputation for quality, elegance, and luxury that is synonymous with the Yurman brand.

<em>Infringement of Yurman's Stacked Cable Dress</em>

127.    Defendant's infringement of Yurman's Stacked Cable Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the Silver and 18K Gold Magnifica Five-Row Cuff, the Silver Italian Cable Magnifica Five-Row Cuff, and similar jewelry products, which share the configuration, design, coloring, and ornamentation of Stacked Cable Trade Dress embodiments.  The Silver and 18K Gold Magnifica Five-Row Cuff and the Silver Italian Cable Magnifica Five-Row Cuff share the following distinct and non-functional design elements with other embodiments of the Stacked Cable Trade Dress, as reflected in Figure 25 below:

- A flexible, open cuff bracelet design comprising a plurality of bracelet loops (between 3 and 15), each comprising an incomplete circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, each incorporating a single gap measuring approximately 10-20mm across.

- Some but not all of the loops comprising the bracelet embody Yurman's signature twisted helix cable configuration, while other of the loops are smooth.

- The loops comprising the bracelet are stacked in an irregular pattern one on top of the other with different sized gaps between each successive set of loops to present a dynamic and unconventional asymmetric appearance for the bracelet.

- The loops are all connected by a smooth end cap comprising sterling silver, yellow gold, rose gold, or similar precious metals located at and covering each open end of the bracelet, which offers the impression of one or two elongated bands of metal that may present a relatively flat face or may taper to the end of the bracelet, connecting the separate loops to form a single overall jewelry piece constituting a flexible, open cuff bracelet design.

- A bold, voluminous design incorporating rounded and smooth ridges along the length of the twisted cable portions and end caps of the bracelet.

**Figure 25 – Comparison of Defendant Products and Stacked Cable Trade Dress Products**



128.    The blatant similarities between the legitimate items embodying the Stacked

Cable Trade Dress and the infringing items sold by Defendant are immediately apparent.

129.    The similarities between the legitimate items embodying the Stacked Cable Trade Dress and the infringing items sold by Defendant are so striking that consumers have been and will continue to be confused into believing that the infringing Phillip Gavriel/Royal Chain items were designed and sold by Yurman, and represent the reputation for quality, elegance, and luxury that is synonymous with the Yurman brand.

### *Infringement of Yurman's Crossover Trade Dress*

130.    Defendant's infringement of Yurman's Crossover Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the Sterling Silver & 18K Gold Italian Cable Triple Row Abbraccio Cuff and similar jewelry products, which share the configuration, design, coloring, and ornamentation of the Crossover Trade Dress embodiments.  The Sterling Silver & 18K Gold Italian Cable Triple Row Abbraccio Cuff shares the following distinct and non-functional design elements with other embodiments of the Crossover Trade Dress, as reflected in Figure 26 below:

- A flexible, open cuff bracelet design comprising a small number of bracelet loops (between 2 and 3), each comprising an incomplete circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, and each incorporating a single gap measuring approximately 10-20mm across.

- Some but not all of the loops comprising the bracelet embody Yurman's signature twisted helix cable configuration, while other of the loops are smooth.

- Rounded and smooth ridges along the length of the twisted cable portion of the bracelet.

- The loops comprising the bracelet are stacked on top of one another in a tightly connected configuration, which allows a viewer to simultaneously distinguish

between the separate loops while also presenting either no gaps or only very small gaps separating the stacked loops from one another.

- At least one of the loops comprising the bracelet is angled in such a way as to pass over or under one of the other loops comprising the bracelet, to create a dynamic and at times asymmetric presentation.

- The loops comprising the bracelet may vary in terms of their materials, for example with one loop consisting of sterling silver, while another loop in the same bracelet may consist of yellow gold.

- The loops are all connected by a smooth end cap comprising sterling silver, yellow gold, rose gold, or similar precious metals located at and covering each open end of the bracelet, which offers the impression of one or two elongated bands of metal that may present a relatively flat face or may taper to the end of the bracelet, connecting the separate loops to form a single overall jewelry piece constituting a flexible, open cuff bracelet design.

**Figure 26 – Comparison of Defendant Product and Crossover Trade Dress Products**



131.    The blatant similarities between the legitimate items embodying the Crossover Trade Dress and the infringing item sold by Defendant are immediately apparent.

132.    The similarities between the legitimate items embodying the Crossover Trade Dress and the infringing item sold by Defendant are so striking that consumers have been and will continue to be confused into believing that the infringing Phillip Gavriel/Royal Chain item was designed and sold by Yurman, and represents the reputation for quality, elegance, and luxury that is synonymous with the Yurman brand.

*Infringement of Yurman's Alternating Cable Chain Trade Dress*

133.    Defendant's infringement of Yurman's Alternating Cable Chain Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the Sterling Silver and 18K Gold Italian Cable Textured Oval Link Bracelet, the 14K Gold Italian Cable Oval Link Necklace, the Paperclip Cable Link Necklace in Silver and 18K Gold, the Silver Big Bold Link Italian Cable Necklace, the 14K Round Link Cable Paperclip Chain Bracelet, the Silver Italian Cable Paperclip Necklace, the 18K Gold and Silver Italian

Cable Link Bracelet, the 14K Gold Pera Cable Link Bracelet, the Silver Italian Cable Paperclip Bracelet, the Silver Twisted Oval Round Link Bracelet, the 14K Gold Italian Cable Textured Oval Link Bracelet, the 14K Gold Woven Oval Link Bracelet, the Sterling Silver & 18K Gold Italian Cable Large Oval Link Bracelet, the Silver Italian Cable Oval Chain Bracelet, the Silver Italian Cable Oval Chain Necklace, the 14K Gold Round Link Cable Paperclip Chain Necklace, the Silver and 18K Gold Geometrics Link Necklace, the Silver and 18K Gold Oval Cable Link Bracelet, the Silver and 18K Gold Oval Cable Link Necklace, the Silver Big Bold Link Italian Cable Necklace with Black Onyx Accents, the Silver & 19K Gold Italian Cable Oval Link Chain Bracelet, and the Silver & 18K Gold Domed Oval Cable Link Bracelet, and similar jewelry products, which share the configuration, design, coloring, and ornamentation of the Alternating Cable Chain Trade Dress embodiments.  The Sterling Silver and 18K Gold Italian Cable Textured Oval Link Bracelet, the 14K Gold Italian Cable Oval Link Necklace, the Paperclip Cable Link Necklace in Silver and 18K Gold, the Silver Big Bold Link Italian Cable Necklace, the 14K Round Link Cable Paperclip Chain Bracelet, the Silver Italian Cable Paperclip Necklace, the 18K Gold and Silver Italian Cable Link Bracelet, the 14K Gold Pera Cable Link Bracelet, the Silver Italian Cable Paperclip Bracelet, the Silver Twisted Oval Round Link Bracelet, the 14K Gold Italian Cable Textured Oval Link Bracelet, the 14K Gold Woven Oval Link Bracelet, and the Sterling Silver & 18K Gold Italian Cable Large Oval Link Bracelet, the Silver Italian Cable Oval Chain Bracelet, the Silver Italian Cable Oval Chain Necklace, the 14K Gold Round Link Cable Paperclip Chain Necklace, the Silver and 18K Gold Geometrics Link Necklace, the Silver and 18K Gold Oval Cable Link Bracelet, the Silver and 18K Gold Oval Cable Link Necklace, the Silver Big Bold Link Italian Cable Necklace with Black Onyx Accents, the Silver & 19K Gold Italian Cable Oval Link Chain Bracelet, and the Silver & 18K Gold

Domed Oval Cable Link Bracelet share the following distinct and non-functional design elements with other embodiments of the Alternating Cable Chain Trade Dress, as reflected by the select examples of these jewelry pieces shown in Figures 27 and 28 below:

- A necklace or bracelet comprising a chain of interconnected circular, oval, and/or elongated oval chain links of sterling silver, yellow gold, rose gold, or similar precious metals.

- Certain chain links embody a full or stylized twisted helix cable design, but are connected to other links that do not embody that design and are instead smooth— with the twisted helix cable links connecting in an alternating or otherwise predictable pattern with smooth links, creating an elaborate but symmetrical or regular overall design for the jewelry piece.

- The different chain links comprising the bracelet or necklace may vary in terms of their materials.  For example, in a single bracelet the chain links embodying the twisted helix cable design may consist of sterling silver, while the smooth chain links to which they are connected may consist of yellow gold.

**Figure 27 – Comparison of Select Defendant Products and
Alternating Cable Chain Trade Dress Products**



**Figure 28 – Comparison of Select Defendant Products and
Alternating Cable Chain Trade Dress Products, continued**



134.    The blatant similarities between the legitimate items embodying the Alternating Cable Chain Trade Dress and the infringing items sold by Defendant are immediately apparent.

135.    The similarities between the legitimate items embodying the Alternating Cable Chain Trade Dress and the infringing items sold by Defendant are so striking that consumers have been and will continue to be confused into believing that the infringing Phillip

Gavriel/Royal Chain items were designed and sold by Yurman, and represent the reputation for quality, elegance, and luxury that is synonymous with the Yurman brand.

*Infringement of Yurman's Adorned Bracelet Trade Dress*

136.    Defendant's infringement of Yurman's Adorned Bracelet Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the Sterling Silver & 18K Gold Italian Cable Caramella Bracelet, the Silver & 18K Pavé Heart Hook Bangle, and similar jewelry products, which share the configuration, design, coloring, and ornamentation of the Adorned Bracelet Trade Dress embodiments.  The Sterling Silver and 18K Gold Italian Cable Caramella Bracelet and the Silver & 18K Gold Diamond Heart Cable share the following distinct and non-functional design elements with other embodiments of the Adorned Bracelet Trade Dress, as reflected in Figure 29 below:

- A bracelet design comprising a twisted helix cable configuration, which presents the external appearance of between 6 and 10 individual strands of material entwined with one another to form a single cable.

- A thin (between 2mm and 6mm in thickness) closed bracelet design comprising a circular loop of sterling silver, yellow gold, rose gold, or similar precious metals, and closed by the distinctive insignia described below.

- Rounded and smooth ridges along the length of the twisted cable portion of the bracelet.

- Connected to one end of the bracelet either directly or using a flexible chain link connection, an adornment piece comprising either a smooth or faceted precious stone or mineral (such as amethyst or black orchid) or a heart.

- Located on one side of or underneath the adornment piece, a smooth hoop of metal that can receive a hook.

- On the side of the bracelet that is not permanently affixed to the adornment piece, a raised neck comprising one or more bands of sterling silver, yellow gold, rose gold, or other precious metal that rises above the plane of the bracelet, which is attached to a hook of the same material.

**Figure 29 – Comparison of Defendant Products and Adorned Bracelet Trade Dress Products**



137.   The blatant similarities between the legitimate items embodying the Adorned Bracelet Trade Dress and the infringing items sold by Defendant are immediately apparent.

138.   The similarities between the legitimate items embodying the Adorned Bracelet Trade Dress and the infringing items sold by Defendant are so striking that consumers have been and will continue to be confused into believing that the infringing Phillip Gavriel/Royal Chain items were designed and sold by Yurman, and represent the reputation for quality, elegance, and luxury that is synonymous with the Yurman brand.

*Infringement of the Streamline Tag Trade Dress*

139.     Defendant's infringement of the Streamline Tag Trade Dress includes, but is not limited to, the marketing and sale, including through the Phillip Gavriel brand, of the 14K Gold Tag Necklace and similar jewelry products, which share the configuration, design, coloring, and ornamentation of Streamline Tag Trade Dress embodiments.   The 14K Gold Tag Necklace shares the following distinct and non-functional design elements with other embodiments of the Streamline Tag Trade Dress, as reflected in Figure 30 below:

- A pendant comprising an elongated oblong oriented such that the long sides of the oblong hang vertically downwards, with the shorter sides of the oblong located at the top and bottom of the pendant exhibiting a gentle convex curve compared with the straight lines characterizing the longer sides of the oblong.

- A small aperture near the top of the pendant, by which the pendant is attached to an elegant and smooth bail, which in turn is connected to a necklace chain.

- The pendant, bail, and necklace chain all comprising sterling silver, yellow gold, rose gold, or other precious metals.

- One face of the pendant exhibiting a flat, matte face of the metal from which the pendant is made.

- On the obverse side of the pendant, a chevron pattern comprising alternately raised and sunken sculpted ridges in the precious metal, presenting as a single line of inverted chevrons descending along the entire vertical length of the pendant, and connected by a central ridge running down the center of the pendant.

- All edges and corners of the pendant exhibit smooth but decisive joints.

**Figure 30 – Comparison of Defendant Product and Streamline Tag Trade Dress Products**



140.    The blatant similarities between the legitimate items embodying the Streamline Tag Trade Dress and the infringing item sold by Defendant are immediately apparent.

141.    The similarities between the legitimate items embodying the Streamline Tag Trade Dress and the infringing item sold by Defendant are so striking that consumers have been and will continue to be confused into believing that the infringing Phillip Gavriel/Royal Chain item was designed and sold by Yurman, and represents the reputation for quality, elegance, and luxury that is synonymous with the Yurman brand.

*Consumer Confusion Resulting from Infringement of the Yurman Trade Dress*

142.    Each of the Royal Chain and Phillip Gavriel products described in paragraphs 112-141 above (together, the "Infringing Products")[1] are so similar to products embodying the

---

[1] It appears that Defendant and other retailers of Royal Chain or Phillip Gavriel products occasionally market Infringing Products using product names other than those listed here, which are (where available) those used by

Yurman Trade Dress that consumers seeing them, on information and belief, have been, are, and will continue to be confused into thinking that the Infringing Products are associated with or originate from Yurman.  These products lack any differences that are significant enough to dispel confusion on serial viewing.  Accordingly, ordinary consumers are likely to be confused as to the relationship between Yurman and the Infringing Products and specifically confused as to whether Yurman is the source of, affiliated with, sponsors, or otherwise approves the Infringing Products, at the point of initial interest, point of sale, and afterward.

143.    Indeed, in recognition that customers understand that many Phillip Gavriel products bear the "same look" as Yurman products, at least one retailer appends a "David Yurman" tag to certain Phillip Gavriel items sold on its website, including what appears to be the Silver and Diamond Italian Cable Classic Bracelet (under the name "Shiny Twisted Cuff Fancy Bangle") and the Silver and 18K Gold Cable Bracelet with Diamonds (under the name "Sterling Silver & 18K Gold Diamond Cuff Bangle") described at paragraph 112.  A screenshot of the retailer's website showing the selection of Phillip Gavriel products with the "david yurman" filter applied has been attached hereto as Exhibit E.

144.    Consistent with this, even a casual Internet search reveals evidence of actual consumer confusion between Yurman and Gavriel products as a result of Defendant's unabashed copying.  While not specifically naming an Infringing Product, a participant on a jewelry-focused forum on Reddit, for example, in response to a message board posting on a customer's search for a particular Yurman ring product, commented: "***If you want something less expensive***

---

Defendant on royalchain.com or phillipgavriel.com.  "Infringing Products" encompasses all products manufactured, reproduced, distributed, displayed, advertised, promoted, offered for sale, sold, imported, or exported by Defendant that infringes upon the Yurman Trade Dress, and all copies of the products listed here, no matter what product name is or has been used by Defendant or other retailers.

*but with the same look as Yurmam [sic] check out Phillip Gavriel*."[2]  Similarly, in the words of

the author of a jewelry-focused blog: "Phillip Gavriel has a bracelet line called popcorn *and*

*looks very similar to David Yurman from bangles to cuffs* . . . And [another Gavriel product

line] is a *dead ringer for Yurman*."[3]

145.    Yurman has not granted a license or any other form of permission to Defendant

with respect to the Yurman Trade Dress.

146.    On information and belief, Defendant has infringed and infringes upon the

Yurman Trade Dress in bad faith.  This infringement has allowed Defendant to "free ride" on

Yurman's decades of work designing, refining, and advertising the Yurman Trade Dress and

building the reputation and goodwill associated with it and with the Yurman brand.

147.    The conclusion that Defendant has infringed in bad faith is bolstered by the fact

that, in addition to knocking off Yurman designs, Defendant has in many instances used product

names that evoke Yurman's product names, deepening customer confusion.  For example, the

design of Defendant's Italian Cable *Renaissance* Gemstones Bracelets, described at paragraph

121, mimics the design of Yurman's *Renaissance* Bracelet, an embodiment of the Renaissance

Trade Dress.  Likewise, Defendant's Silver and Diamond Italian *Cable Classic* Bracelet,

described at paragraph 112, mimics the design of the Yurman *Cable Classics* Bracelet with Pavé

Domes and 18K Yellow Gold and the Yurman *Cable Classics* Collection Bracelet with Pearls

and Diamonds.

148.    Yurman in fact holds registered word marks for both "Renaissance" and "Cable

Classics Collection," reflecting the centrality of the language to the Yurman brand and the

---

[2] https://www.reddit.com/r/jewelry/comments/2mugjf/best_way_to_buy_david_yurman/, accessed on September 14, 2023.
[3] http://www.goldwiser.com/champions/tag/phillip-gavriel/, accessed on September 14, 2023.

deliberate efforts by Defendant to create confusion among consumers by emulating both the

Yurman Trade Dress and the terminology employed by Yurman to market those products,

making Defendant's imitation yet more egregious.  Claims arising from Defendant's

infringement of Yurman's Renaissance Word Mark are described at paragraphs 168 through 170

below.

149.    Defendant's infringement has caused Yurman to suffer harm, and Yurman is

accordingly entitled to injunctive relief and damages.

### Infringement of Yurman's Copyrights

150.    In selling the Infringing Products, Defendant has also infringed upon the Yurman

Trade Dress Copyrights.

151.    As described above at paragraphs 72 through 78 and 80 through 82, certain

Yurman jewelry items (specifically, those indicated in Figures 11 through 12 and 14 through 16)

are both protectable as embodiments of the Yurman Trade Dress and covered by the Yurman

Trade Dress Copyrights.

152.    Accordingly, numerous of the Infringing Products listed and displayed in

paragraphs 112 through 141 and Figures 20 through 30 also represent Defendant's infringement

of the Yurman Trade Dress Copyrights.  As the visual comparisons set forth in Figures 20

through 30 show, the Infringing Products are substantially similar to the Yurman products

shown.

153.    For ease of reference, comparisons of certain of the Infringing Products and the

products protected by the Yurman Trade Dress Copyrights are reflected in Figure 31 below.

**Figure 31 – Comparison of Defendant Products and Yurman
Trade Dress Copyright Products**







**Yurman's Trade Dress Copyrights (Set 3)**

2005 Chain Collection Necklace No. CH0178

Copyright Registration No. VA 1-344-440

Tahitian Bijoux Necklace No. CH0144

Copyright Registration No. VA 1-282-483

**Infringing Royal Chain Pieces**

Sterling Silver and 18k Gold Italian Cable Textured Oval Link Bracelet

14k Gold Italian Cable Oval Link Necklace

Paperclip Cable Link Necklace in Silver & 18K Gold





154.     This comparison demonstrates the substantial similarity between those Infringing Products and the Yurman products listed in Figure 31[4] and therefore evidences Defendant's infringement of the Yurman Trade Dress Copyrights.

155.     Next, Defendant has also infringed upon the Yurman Trade Dress Copyrights (specifically, Copyright Registration No. VAu 405-161) by offering or selling at least the "Silver & 18K Gold Nautical Hook Bracelet."

---

[4] That substantial similarity is further described in paragraphs 112 through 141 in the context of describing the substantial similarity between the products with respect to the Yurman Trade Dress.

156.    A comparison of that product and a Yurman item embodying the Cable Hook Copyright Design protected by Copyright Registration No. VAu 405-161 is reflected in Figure 32 below.

**Figure 32 – Comparison of Defendant Product and Cable Hook Copyright Design Product Protected by a Yurman Trade Dress Copyright**



157.    This comparison demonstrates the substantial similarity between the Silver & 18K Gold Nautical Hook Bracelet and the Yurman product listed in Figure 32.  As it shows, the products share the following distinct design elements:

- An incomplete bracelet loop embodying Yurman's signature twisted helix cable configuration.

- The placement, at one terminus of the bracelet loop, of a teardrop-shaped eye.

- The placement, at the other terminus of the bracelet loop, of a hook that projects outward and is capable of placement through the teardrop-shaped eye.

- The placement of end caps below each of the hook and the eye.

- The use of contrasting precious metals to add a dynamic appearance to the bracelet.

158.    This substantial similarity demonstrates that Defendant has infringed upon one of the Yurman Trade Dress Copyrights by copying the Cable Hook Copyright Design.

159.    Next, Defendant has infringed upon the Petite X Earrings Copyright by offering or selling at least the "14K Diamond Cable Circle Drop Earrings."

160.    A comparison of that product and a product protected by the Petite X Earrings Copyright is reflected in Figure 33 below.

**Figure 33 – Comparison of Defendant Product and Petite X Earrings Copyright Product**



161.    This comparison demonstrates the substantial similarity between the 14K Diamond Cable Circle Drop Earrings and the Yurman product listed in Figure 33.  As it shows, the products share the following distinct design elements:

- Two nested circles of yellow gold, each embodying a twisted helix cable configuration, with one cable circle bearing approximately half the diameter of the second cable circle.

- The suspension of the second cable circle of smaller diameter within the first, larger cable circle and on the same vertical plane.

- The nested cable circles suspended from a bail that also embodies a twisted helix cable configuration.

- The placement of three white diamond accent pieces upon the gold cable circles in a triangular formation, with the "top" diamond accent piece placed directly

below the bail of each earring and the "bottom" diamond accent pieces placed

lower than and equidistant to the "top" diamond accent piece, forming a triangle.

- Each white diamond accent piece being composed of diamonds placed in an "X" or cross formation, with each arm of equal size.

162.     This substantial similarity demonstrates that Defendant has infringed upon the Petite X Earrings Copyright.

163.     As the comparisons in Figures 31 through 33 show, the "total concept and feel" between the designs of the products protected by the Yurman Trade Dress Copyrights and the Petite X Earrings Copyright and the listed Phillip Gavriel/Royal Chain products (those Phillip Gavriel/Royal Chain products together, the "Copyright-Infringing Products")[5] is identical.  In overall effect, Defendant's knock-off designs are not only confusingly similar, but in many instances virtually indistinguishable from Yurman's designs, with the designs of the Copyright-Infringing Products mimicking every key element of Yurman's designs.

164.     On information and belief, it was not until long after Yurman acquired the Yurman Trade Dress Copyrights and the Petite X Earrings Copyright that Defendant began offering the Copyright-Infringing Products for sale.

**Infringement of Yurman's Trademarks and Word Marks**

165.     Defendant's sale of certain of the Infringing Products and Copyright-Infringing Products also infringes upon Yurman's registered trademarks.  Specifically, Defendant promotes,

---

[5] As is the case for "Infringing Products," "Copyright-Infringing Products" should be understood to encompass all products that infringe upon the listed copyrights, no matter the product name used by Defendant or other retailers.

advertises, distributes, offers for sale, and/or sells goods in interstate commerce using an imitation of the Yurman Marks (the "Mark-Infringing Products").[6]

166.    As reflected in Figure 34 below, certain Phillip Gavriel and Royal Chain products including but not limited to the Sterling Silver & 18K Gold Italian Cable Stackable Cuff Bangle, the Sterling Silver and 18K Gold Classica Italian Cable Bangle, the Silver and 18K Gold Italian Cable Classic Cuff Bangle, the Silver and Diamond Italian Cable Classic Bracelet, the Silver and 18K Gold Italian Cable Pearl Bracelet, the Silver and 18K Gold Cable Bracelet with Diamonds, and the Abbraccio Diamond Bangle in Sterling Silver and 18K are substantially similar to the design protected by the Cable Bracelet Trademark.  Each of these products also substantially conforms to the description that accompanies Cable Bracelet Trademark, which reads in relevant part: "Color is not claimed as a feature of the mark. The mark consists of an open twisted-cable bracelet design with faceted stones at each end."

---

[6] As is the case for "Infringing Products" and "Copyright-Infringing Products," "Mark-Infringing Products" should be understood to encompass all products that infringe upon the Yurman Marks, no matter the product name used by Defendant or other retailers.

**Figure 34 – Comparison of Defendant Products and a Cable Bracelet Trademark Product**



167.    Further, reflected in Figure 35 below, certain Phillip Gavriel and Royal Chain products including but not limited to the Italian Cable Renaissance Bangle series and the Square Cable Silver Studded Bangle series are substantially similar to the design protected by the Renaissance Cable Trademark.  This product also substantially conforms to the description that accompanies the Renaissance Cable Trademark, which reads in relevant part: "The mark consists of an open twisted-cable bracelet design. At each end is a neck with a diamond-shaped element on the top and oval-shaped elements on the sides. In between the diamond-shaped and oval-shaped elements are two raised beads positioned in an axis parallel to that of the longer axis of the oval. The neck is bordered on each side by two thin circular bands."

81

**Figure 35 – Comparison of Defendant Products and a
Renaissance Cable Trademark Product**



168.    Further, as reflected in Figures 36, 37, and 38 below, certain Royal Chain and

Phillip Gavriel products, including but not limited to the Italian Cable Renaissance Bangle series,

are named, marketed, and sold using the term "Renaissance."  Yurman's Renaissance Word Mark

covers the use of the term "Renaissance" in the field of fine jewelry and "consists of standard

characters without claim to any particular font style, size, or color," and Yurman has used that

term in marketing and selling its products, including on its website as reflected in Figure 36

below.

**Figure 36 – Example of Yurman Product Marketed with "Renaissance" Word Mark**



169.    Phillip Gavriel has used the term "Renaissance"—without owning or licensing any registered trademark—in marketing and selling nearly identical products, including on its website as reflected in Figure 37 below.

**Figure 37 – Example of Defendant Product Marketed with "Renaissance" Mark**



170.    As reflected in Figure 38, the blatant similarity between Yurman products named, marketed, and sold using the Renaissance Word Mark and almost identical products named,

marketed, and sold by Defendant using the term "Renaissance" ensures customer confusion, mistake, and deception as to the products' source, origin, and authenticity.

**Figure 38 – Comparison of Defendant Products and Yurman Products Covered by "Renaissance" Word Mark**



171.    On information and belief, Defendant promotes, advertises, distributes, sells, and/or offers for sale substantial quantities of its Mark-Infringing Goods with the knowledge and intent that such goods will be mistaken for the goods offered for sale by Yurman and with the knowledge that it has no authority to use the Yurman Marks.  In so doing, Defendant improperly and unlawfully uses the Yurman Marks without Yurman's permission.

172.    Defendant's actions are likely to cause confusion of consumers at the point of initial interest, the point of sale, and afterward, who will believe that Defendant's Mark-Infringing Goods are goods originating from, associated with, and/or approved by Yurman.

## CLAIM ONE: INFRINGEMENT OF THE YURMAN TRADE DRESS AND
## UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT

### (15 U.S.C. § 1125(a))

173.    Yurman incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

174.    Yurman has ownership rights in the Yurman Trade Dress.

175.    The Yurman Trade Dress is unique, distinctive, and nonfunctional, and has achieved substantial secondary meaning and goodwill in that it has come to be associated with a single source in the minds of consumers.

176.    The design of the Yurman Trade Dress is not essential to its use or purpose.  Nor does that design affect the cost or quality of the jewelry that embodies the Yurman Trade Dress. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Yurman Trade Dress.  The combination of features comprising the Yurman Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer.  These features, in combination, serve only to render the Yurman products embodying the Yurman Trade Dress distinct and recognizable as goods originating from Yurman.

177.    The Yurman Trade Dress thus constitutes protectable trade dress pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

178.    The design and look and feel of the Infringing Products are confusingly similar to the Yurman Trade Dress and incorporate the distinctive features of the Yurman Trade Dress.  As such, the marketing and sale of the Infringing Products constitute the use in commerce of trade dress that is likely to cause confusion and mistake and to deceive consumers as to the source or

origin of the Infringing Products or their affiliation, connection, or association with Yurman, or Yurman's sponsorship or approval of the Infringing Products.

179.   Defendant's manufacture, marketing, and sale of the Infringing Products, which copy the Yurman Trade Dress, enable and have already enabled Defendant to free ride on Yurman's reputation and goodwill associated with the Yurman Trade Dress.

180.   Defendant's acts therefore constitute trade dress infringement and unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

181.    On information and belief, Defendant was aware of the Yurman Trade Dress at the time the Infringing Products were conceptualized, designed, manufactured, offered for sale, and/or sold.  Accordingly, Defendant's infringement as described above is deliberate, willful, and in bad faith, rendering this an exceptional case under 15 U.S.C. § 1117.

182.   Defendant's acts of infringement have caused irreparable harm in addition to monetary damage to Yurman, including but not limited to harm to Yurman by virtue of damage to the goodwill and reputation of Yurman's business, and unless enjoined and restrained, will cause further irreparable harm, leaving Yurman with no adequate remedy at law.

**CLAIM TWO: INFRINGEMENT OF THE YURMAN
<u>TRADE DRESS COPYRIGHTS AND THE PETITE X EARRINGS COPYRIGHT</u>**

**(17 U.S.C. § 501)**

183.   Yurman incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

184.   The Yurman Trade Dress Copyright Designs, the Cable Hook Copyright Design, and the Petite X Earrings Copyright Design are original works of authorship, embodying subject matter protected by copyright.

185.    Yurman has applied for and obtained from the United States Copyright Office copyright registrations for the Yurman Trade Dress Copyright Designs, the Cable Hook Copyright Design, and the Petite X Earrings Copyright Design, which are attached hereto as Exhibits B-C.

186.    The Yurman Trade Dress Copyrights and the Petite X Earrings Copyright are therefore federally registered and were federally registered prior to Defendant's copying.

187.    Yurman is the sole and exclusive owner of all right, title, and interest in and to the Yurman Trade Dress Copyrights and the Petite X Earrings Copyright and has been at all relevant times.

188.    Defendant had access to the Yurman Trade Dress Copyright Designs, the Cable Hook Copyright Design, and the Petite X Earrings Copyright Design because Yurman has offered jewelry products reflecting those Designs for sale to the public through multiple channels, including online retailers and brick and mortar stores, has extensively advertised those jewelry products to the public, and has received prominent coverage of those products from the media.

189.    Defendant has copied, advertised, offered for sale, and/or sold substantially similar copies of the Yurman Trade Dress Copyright Designs, the Cable Hook Copyright Design, and the Petite X Earrings Copyright Design.  Defendant has done so without Yurman's authorization or permission and in violation of Yurman's exclusive rights in the Yurman Trade Dress Copyrights and the Petite X Earrings Copyright.

190.    Defendant's unlawful reproduction, advertisement, distribution, and/or sale of the Yurman Trade Dress Designs, the Cable Hook Copyright Design, and the Petite X Earrings Copyright Design constitute copyright infringement.

191.    Defendant acted intentionally and in bad faith when it reproduced the Yurman Trade Dress Designs, the Cable Hook Copyright Design, and the Petite X Earrings Copyright Design (in identical or substantially similar form), and advertised, distributed, displayed, and/or sold products bearing those designs.

192.    Defendant's infringement of the Yurman Trade Dress Copyrights and the Petite X Earrings Copyright has directly and proximately resulted in harm to Yurman.

193.    As a direct and proximate result of Defendant's infringement of the Yurman Trade Dress Copyrights and the Petite X Earrings Copyright, Yurman has been damaged, and is entitled to damages in an amount to be proven at trial.

194.    Yurman is also entitled to Defendant's profits attributable to its infringement pursuant to 17 U.S.C. § 504 and entitled to its costs and fees pursuant to 17 U.S.C. § 505.

195.    Defendant's infringement of the Yurman Trade Dress Copyrights and the Petite X Earrings Copyright has also caused and will continue to cause Yurman irreparable harm for which there is no adequate remedy at law unless it is enjoined.

196.    Yurman is therefore also entitled to injunctive relief and to enjoin Defendant's continuing infringement.

### CLAIM THREE: INFRINGEMENT OF THE YURMAN MARKS IN VIOLATION OF THE LANHAM ACT

### (15 U.S.C. § 1114)

197.    Yurman incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

198.    Yurman advertises, markets, offers, and sells its products using the Yurman Marks described above and uses the Yurman Marks to distinguish its products from the products and related items of others in the same or related fields.

199.    Because of Yurman's long, continuous, and exclusive use of the Yurman Marks, the Yurman Marks have come to mean that products bearing those marks come from Yurman, and are understood by customers and the public as such.

200.    Defendant unlawfully advertised, marketed, offered, and sold products bearing knock-off versions of the Yurman Marks with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity.  Defendant intended customers to believe, incorrectly, that the accused products originated from, were affiliated with, and/or were authorized by Yurman and likely caused such erroneous customer beliefs.

201.    Defendant's activities constitute infringement of the Yurman Marks.

202.    As a result of Defendant's wrongful actions, Yurman is entitled to recover its actual damages, Defendant's profits attributable to its infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a) and (b).

203.    Alternatively, Yurman is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c).

204.    Yurman is further entitled to injunctive relief, including an order impounding all infringing products and related promotional materials in Defendant's possession.

205.    Yurman has no adequate remedy at law for Defendant's infringement because: (i) the Yurman Marks are valuable and unique intellectual property with no readily determinable market value; (ii) Defendant's infringement of the Yurman Marks gives rise to harm to Yurman, Yurman's reputation, and Yurman's goodwill such that Yurman cannot be made whole by any monetary award; (iii) the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of  Defendant's infringing products if Defendant's wrongful

conduct is allowed to continue; and (iv) Defendant's wrongful conduct and the resultant harm to Yurman is likely to be continuing in the absence of equitable relief.

## CLAIM FOUR: COMMON LAW TRADE DRESS INFRINGEMENT

### (New York Law)

206.    Yurman incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

207.    Defendant's conduct alleged herein constitutes trade dress infringement under the common law of the state of New York.

208.    Defendant's conduct alleged herein caused irreparable harm in addition to monetary damage to Yurman, including but not limited to harm to Yurman by virtue of damage to the goodwill and reputation of Yurman's business, and unless enjoined and restrained, will cause further irreparable harm, leaving Yurman with no adequate remedy at law.

## CLAIM FIVE: COMMON LAW UNFAIR COMPETITION

### (New York Law)

209.    Yurman incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

210.    Defendant's conduct alleged herein, including its bad faith copying of Yurman's protected designs, constitutes unfair competition under the common law of the state of New York.

211.    Defendant's conduct alleged herein caused irreparable harm in addition to monetary damage to Yurman, including but not limited to harm to Yurman by virtue of damage to the goodwill and reputation of Yurman's business, and unless enjoined and restrained, will cause further irreparable harm, leaving Yurman with no adequate remedy at law.

**PRAYER FOR JUDGMENT AND RELIEF**

WHEREFORE, Yurman respectfully requests that this Court enter judgment in its favor on the claims set forth above and award it relief including, but not limited to:

1.       Finding that: (i) Defendant has infringed upon the Yurman Trade Dress and engaged in unfair competition in violation of 15 U.S.C. § 1125(a); (ii) Defendant has infringed upon the Yurman Trade Dress Copyrights and the Petite X Earrings Copyright in violation of 17 U.S.C. § 501; (iii) Defendant has infringed upon the Yurman Marks in violation of 15 U.S.C. §1114; (iv) Defendant has engaged in trade dress infringement under New York common law; and (v) Defendant has engaged in unfair competition under New York common law;

2.       Entering a permanent injunction enjoining and restraining Defendant, its agents, servants, officers, directors, employees, affiliates, and all those acting in privity, active concert, or participation with any of them, and their parents, subsidiaries, divisions, successors, and assigns who receive actual notice of the order and judgment by personal service or otherwise, from:

>    a.    Imitating, copying, or making any unauthorized use of the Yurman Trade Dress or the designs protected by the Yurman Trade Dress Copyrights, including the Cable Hook Copyright Design, and the Petite X Earrings Copyright, or the Yurman Marks, including, without limitation, by manufacturing, reproducing, distributing, displaying, advertising, promoting, offering for sale, selling, importing, or exporting (or causing any of the foregoing to be done) any products bearing the Yurman Trade Dress or embodying the designs protected by the Yurman Trade Dress Copyrights, the Petite X Earrings Copyright, or the Yurman Marks, or bearing any other confusingly similar mark or design;

b.  Using any false designation of origin or false description or performing any act that can or is likely to lead members of the trade or public to believe that Defendant is associated with Yurman or that any product manufactured, distributed, displayed, advertised, promoted, offered for sale, or sold by Defendant is in any manner associated or connected with Yurman, or is authorized, licensed, sponsored, or otherwise approved by Yurman; and

c.  Engaging in any other activity constituting unfair competition with Yurman, or constituting an infringement of the Yurman Trade Dress, the Yurman Trade Dress Copyrights, the Petite X Earrings Copyright, or the Yurman Marks;

3.  Awarding Yurman all actual damages, direct damages, indirect damages, consequential damages (including lost profits), special damages, costs, fees, and expenses incurred by reason of Defendant's wrongful acts, or, if Yurman elects, statutory damages as the Court considers just;

4.  Awarding Yurman treble damages sustained as a result of Defendant's willful and unlawful conduct, pursuant to 15 U.S.C. § 1117(a);

5.  Ordering an accounting by Defendant to Yurman for any and all profits derived as a result of marketing, promoting, or selling any goods that are confusingly similar to the Yurman Trade Dress or the designs protected by the Yurman Trade Dress Copyrights, the Petite X Earrings Copyright, or the Yurman Marks;

6.  Ordering Defendant to deliver to Yurman any remaining inventory of the Infringing Products, the Copyright-Infringing Products, and the Mark-Infringing Products, and take down and destroy any and all advertising and promotional materials, displays, marketing

materials, web pages, and all other data or things relating to them in compliance with 15 U.S.C. § 1118;

7.      Awarding Yurman its actual costs and attorneys' fees incurred in bringing and defending this action pursuant to 15 U.S.C. § 1117(a);

8.      Awarding Yurman pre-judgment and post-judgment interest on each and every monetary award to Yurman; and

9.      Granting such other relief as the Court deems just and proper.

## **JURY DEMAND**

Yurman respectfully requests a trial by jury as to all issues so triable.

Dated: September 18, 2023

By: */s/ Andrew D. Gish*
Andrew D. Gish

John M. Neukom (*pro hac vice* forthcoming)
Debevoise & Plimpton LLP
650 California Street
San Francisco, CA 94108
Tel: (415) 738-5719
jneukom@debevoise.com

Andrew D. Gish (Bar No. 4918454)
andrew@gishpllc.com
Michael M. Powell (Bar No. 5263876)
michael@gishpllc.com
Raymond J. Bilderbeck (Bar No. 4883328)
ray@gishpllc.com
Gish PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
(212) 518-2000
*Counsel for Plaintiff*